UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANE LB DOE, a minor by and through her Guardian Ad Litem FRANCOIS BUSCHAUD, an individual,<br>Plaintiff,<br>v.<br>MANHATTAN BEACH UNIFIED SCHOOL DISTRICT, SUPERINTENDENT JOHN BOWES, and PRINCIPAL LUKE OLESIUK,<br>Defendants. | Case No: 2:26-CV-2647-HDV-PVCx<br><br>**ORDER DENYING MOTION TO DISMISS [26]** |

## I. INTRODUCTION

Plaintiff Jane LB Doe ("JLBD"), a minor by and through her Guardian Ad Litem Francois Bushcaud, alleges that Defendants John Bowes, Luke Olesiuk, and Manhattan Beach Unified School District ("MBUSD") violated federal and state law by failing to investigate reports of cyberbullying Plaintiff made in 2024 and failing to ensure Plaintiff's safety.[1] Plaintiff brings this lawsuit under California Education Code section 200 et seq., Title IX of the Education Amendments of 1972, 42 U.S.C. § 1983, 42 U.S.C. § 12131 et seq., 29 U.S.C. § 794 et seq., as well as theories of general negligence and negligent hiring, training, retention, and supervision.

Before the Court is Defendants' Motion to Dismiss ("Motion") brought under Fed. R. Civ. P. 12(b)(6), seeking dismissal of Plaintiff's second, fourth, and fifth causes of action in the Second Amended Complaint ("SAC"). Defendants essentially contend that the SAC is devoid of specifics regarding how Defendants failed to supervise the offending students, and that its decisions are nonetheless subject to "discretionary immunity" under California law.

The Court concludes that Plaintiff has alleged sufficient facts to plead all three claims. As discussed below, the SAC catalogues a horrific, months-long campaign of cyberbullying and harassment of Plaintiff by her fellow students, and avers that despite full reporting of all this conduct Defendants failed to investigate or take any meaningful steps to prevent the continued abuse. Taken as true for purposes of this Motion, the allegations are more than sufficient to state negligence-based and equal protection claims, and are not covered by any discretionary immunity.

The Motion is denied.

---

[1] After the Parties fully briefed the Motion, the Parties filed a joint stipulation seeking voluntary dismissal of all claims against Defendant Sheri Hyding. *See* [Dkt. 31]. On August 12, 2026, the Court dismissed all claims as to Defendant Hyding, without prejudice. [Dkt. 32]. The relief sought as to Ms. Hyding through the instant Motion is therefore denied as moot.

## II. BACKGROUND

This action stems from the allegations of cyber-bullying and sexual harassment of JLBD, a student enrolled at Manhattan Beach Middle School ("MBMS") in the Manhattan Beach Unified School District ("MBUSD"). At the time of the alleged incidents, JLBD was an eighth-grade student at MBMS. SAC ¶ 13. During the fall of 2024, JLBD alleges she was subjected to incidents of sexual assault, sexual harassment, and physical and verbal bullying by her classmates. *See id.* ¶ 12. Specifically, JLBD contends that on November 14, 2024, she encountered a TikTok video with "deepfake" pornographic content depicting Plaintiff performing a purported sexual act posted by an account owned and operated by several of her classmates. *Id.* ¶¶ 14–15. The SAC alleges that Plaintiff was subject to ridicule, physical harassment, and vulgar bullying that referenced the deepfake video of JLBD. *Id.* Plaintiff further alleges that the pattern of harassing behavior intensified following the distribution of the deepfake video, and that numerous students harassed her by filming her changing in the school locker rooms, posting the video on TikTok, leaving derogatory remarks written on a bathroom stall, and soliciting requests for oral sex. *Id.* ¶¶ 18, 21, 36.

Following the deepfake incident, JLBD's father, Mr. Buschaud, sent emails detailing the bullying incidents to the school's principal, Defendant Luke Olesiuk. *Id.* ¶¶ 16–17, 19–20. JLBD contends Defendants failed to investigate the deepfake video when Buschaud first reported it and failed to launch a Title IX investigation, as mandated by school policy. *Id.* ¶¶ 20, 22, 25. During one of these meetings, Olesiuk advised Plaintiff's father that given that the derogatory message written in the bathroom stall had been cleaned, Buschaud and Plaintiff should put the matter behind them. *Id.* ¶ 19. And in response to one of Buschaud's emails, Defendant Olesiuk stated that because the deepfake video was created outside school hours and off premises MBMS was "substantially limited[ed] . . . in any next steps" concerning the deepfake video. *Id.* ¶ 20–21. As a result of these incidents, JLBD alleges she experienced educational harm as well as psychological trauma including post-traumatic stress disorder ("PTSD"), anxiety, and depression. *Id.* ¶¶ 26, 33, 35.

Plaintiff returned to school on December 16, 2024, following a month of mental distress and nearly a week of absences due to the bullying. *Id.* ¶ 29. Upon Plaintiff's return, school administrators allegedly failed to remove the students who bullied JLBD from the locker room,

choosing instead to isolate JLBD rather than taking disciplinary action against the students responsible for the misconduct. *Id.* ¶¶ 29–30, 85, 93. Specifically, Defendants moved JLBD's locker to a different area in the locker room, requiring her to change in the nurse's office while allowing her known abusers to remain in the girls' locker room without adequate adult supervision. *Id.* ¶¶ 29–30, 93. Consequently, the severe distress forced JLBD to take significant time off, including nearly a week of school in mid-December 2024, which culminated in thirteen total absences by early 2025. *Id.* ¶¶ 26, 33. Despite her absences being directly caused by her severe trauma and PTSD, a teacher on special assignment sent JLBD's parents a formal warning letter for chronic absenteeism on February 18, 2025. *Id.* ¶¶ 33, 118. Following this warning letter, Plaintiff's counsel and treating psychiatrist formally demanded a Section 504 evaluation in March 2025 to address her clinical PTSD, anxiety, and appropriate educational accommodations. *Id.* ¶ 34. Despite continued administrative delays and an ongoing hostile campus environment that persisted through the spring, MBUSD finally evaluated JLBD, finding her eligible for special education services under the category of Specific Learning Disability on June 3, 2025. *Id.* ¶¶ 35, 41, 116. Ultimately, Plaintiff alleges MBUSD's persistent failure to accommodate JLBD's known trauma or protect her from her abusers ultimately deprived her of equal access to her education, forcing her family to seek administrative and judicial relief. *Id.* ¶¶ 9, 42, 117–118.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek to dismiss a complaint for failure to state a claim upon which relief may be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual

allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A properly pled complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

**IV. DISCUSSION**

**A. Negligence**

To bring a claim against a public entity, a plaintiff must allege liability grounded in a specific statute as there is no common law tort liability for public entities in California. Cal. Gov't Code § 815; *see Guzman v. Cnty. of Monterey*, 46 Cal. 4th 887, 897 (2009) ("Under the Government Claims Act (Gov. Code, § 810 et seq.), there is no common law tort liability for public entities in California; instead, such liability must be based on statute."). California law establishes sovereign immunity as the baseline rule, Cal. Gov't Code § 815(a), but public employees can be liable under a theory of negligence to the same extent as private persons. *Id.* § 820. And a public employer may be held liable for actions taken by its employees within the scope of employment: "[T]he general rule is that an employee of a public entity is liable for his torts to the same extent as a private person and the public entity is vicariously liable for any injury which its employee causes to the same extent as a private employer." *C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 868 (2012) (citing *Societa Per Azioni De Navigazione Italia v. City of Los Angeles*, 31 Cal. 3d 446, 463 (1982)); Cal. Gov't Code § 815.2.

Plaintiff has sufficiently alleged a negligence claim against Defendants by setting out California statutes creating mandatory duties for school officials and claiming that Defendants' failure to uphold those duties led to her injuries. The SAC cites to various California statutes that create mandatory duties for school officials like Defendants in this case. *See* SAC ¶ 66. These state statutes create separate duties to protect students from foreseeable dangers, supervise students' conduct at all times, and enforce rules and regulations to protect students, faculty, and staff. *Id.*; Cal. Ed. Code § 44807; *see also Dailey v. Los Angeles Unified Sch. Dist.*, 2 Cal. 3d 741, 747 (1970) ("While school districts and their employees have never been considered insurers of the physical safety or students, California law has long imposed on school authorities a duty to 'supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations

necessary to their protection.'") (citing *Taylor v. Oakland Scavenger Co.*, 17 Cal. 2d 594, 600 (1941)).

Plaintiff further alleges that MBUSD's employee, Defendant Olesiuk, shared a "special relationship" with Plaintiff on account of his position as the principal of MBMS. SAC ¶¶ 6, 8, 64–66. As a result of that special relationship, Olesiuk owed "an affirmative duty to use reasonable measures to protect Plaintiff from foreseeable harm, including bullying and sexual harassment caused by third parties such as other students." *Id.* ¶ 66; *see C.A. v. William S. Hart Union High Sch. Dist.*, 53 Cal. 4th 861, 870 (2012) ("[T]his special relationship, impos[es] obligations beyond what each person generally owes others under Civil Code section 1714, the duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally.").

Defendants aver that the SAC does not contain any "specific facts establishing a lack of ineffective supervision that resulted in alleged bullying or harassment once the District was placed on notice of an issue involving Plaintiff." Reply at 4. But this argument turns a blind eye to Defendants' role as educators and school administrators with plenary authority over student oversight and discipline. Plaintiff alleges here that Defendants failed to supervise their students precisely by allowing Plaintiff—even ***after*** the dissemination of the deepfake video—to be subjected to continued bullying, peer-to-peer violence, and additional videos on TikTok. *Id.* ¶¶ 17–18, 21. Taking these allegations in the light most favorable to the Plaintiff, the SAC pleads more than enough detail to sustain a negligence claim against Defendants Olesiuk and MBUSD.

Nor can these negligence claims be dismissed on the basis of "discretionary immunity." Motion at 18–19.

Under California law, a public employee is not liable for injury "resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. California appellate courts have explained that section 820.2 "codifies the common law immunity for the discretionary acts of a government official performed within the scope of his or her authority." *Barner v. Leeds*, 24 Cal. 4th 676, 683 (2000). This immunity is not unlimited; the immunity's scope "should be no greater

than is required to give legislative and executive policymakers sufficient breathing space in which to perform their vital policymaking functions." *Tarasoff v. Regents of Univ. of California*, 17 Cal. 3d 425, 445 (1976).

But the gravamen of the SAC is one of inaction—*i.e.*, that Defendants did essentially nothing in response to the continued campaign of harassment, and failed to launch a Title IX investigation as mandated by MBUSD policies. SAC ¶ 25. For immunity to apply, Defendants must render a considered ***decision*** resulting from a "*consciously exercised discretion* in the sense of assuming certain risks in order to gain other policy objectives." *Lopez v. S. Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 795 (1985) (emphasis in original). There is no such affirmative decision alleged here. Indeed, Olesiuk's actions (if any) appear at most to be "'ministerial[]' decisions that merely implement[ed] a basic policy already formulated." *Caldwell v. Montoya*, 10 Cal. 4th 972, 847 (1995) (citing *Johnson v. State*, 69 Cal. 2d 782, 93 (1968)); *see Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal.3d 780, 793–95 (1985) (rejecting immunity claims for bus driver who chose not to intervene in passenger-on-passenger assault); *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252, 261–62 (1969) (rejecting immunity claims for police officer who negligently conducted traffic investigation).

The California Supreme Court's reasoning in *Lopez* is instructive. In that case, a defendant transit company argued that a bus driver's decision not to intervene in a physical altercation between passengers was immunized by discretionary immunity. *Lopez*, 40 Cal. 3d at 793–94. The California Supreme Court rejected that argument and explained that the bus driver's decision "concerning what *form* of protective action to take" is the kind of "ministerial, operational action taken to implement the Legislature's basic policy decision, that is not immunized by Government Code section 820.2." *Id.* at 794 (internal quotations omitted) (emphasis in original). The same reasoning applies here.

As discretionary immunity does not prevent this action from proceeding as to Defendant Olesiuk, it likewise does not immunize Defendant MBUSD. The District "is immune from liability if, and only if, its employees are immune." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-01521 JAMDAD, 2008 WL 4570339, at *7 (E.D. Cal. Oct. 14, 2008); Cal. Gov't Code § 815.2(b).

**B. Negligent Hiring, Training, Retention, and Supervision**

"An employer may be liable to a third person for the employer's negligence in hiring or retaining an employee who is incompetent or unfit." *Ochoa v. City of Hayward*, No. C-14-02385 DMR, 2014 WL 4088203, at *5 (N.D. Cal. Aug. 19, 2014) (citing *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 1139 (2009)). To bring a claim for negligent hiring, training, retention, and supervision under California law, a plaintiff must allege that an employer knew or should have known of an employee's incompetence in performing his or her job, and that the employer's negligent hiring "created a particular risk or hazard and that particular harm materializes." *Doe v. Cap. Cities*, 50 Cal. App. 4th 1038, 1054 (1996). In other words, Plaintiff must allege that the employer—here, MBUSD—failed to meet its mandatory duty when it hired and trained its employee—Defendant Olesiuk—as to the performance of his duties, and that because of that negligent instruction, Olesiuk's actions at work harmed the plaintiff. *See Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009); *State Farm Fire & Cas. Co. v. Keenan*, 171 Cal. App. 3d 1, 24 (1985).

Defendant argues that the SAC fails to plead a claim upon which relief can be granted because the allegations are devoid of any employee-to-student assault or abuse. Motion at 26. But the SAC does not need to allege employee-to-student harm in the way Defendant frames it, because California courts have recognized the peer-to-peer theory of harm Plaintiff pursues here. *See E.I. v. El Segundo Unified School District*, 111 Cal. App. 5th 1267, 1282 (2025) ("[T]he duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally."). In any event, the SAC sufficiently sets out a plausible theory of negligent hiring, training, retention, and supervision by alleging facts about Olesiuk's failure to properly address the deepfake video and profane graffiti, as well as his alleged failure to comply with MBUSD policy requiring Defendant Olesiuk to forward Mr. Buschaud's complaint to MBUSD's Title IX officer. *See* Reply at 25–26; SAC ¶¶ 16, 18, 20–21, 70. Plaintiff's fifth cause of action is sufficiently pled.

### C. Equal Protection

Next, Defendants argue that the SAC fails to allege sufficient facts to support an equal protection violation under Section 1983. Motion at 21-23.

A plaintiff alleging this constitutional claim must show that a defendant "acting under color of state law, discriminated against them as members of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unif. Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003). Further, plaintiffs must show "either that the defendants intentionally discriminated or acted with deliberate indifference." *Id.* at 1135. In the context of school administrators, the United States Supreme Court and Ninth Circuit have defined "deliberate indifference" to mean that the defendant "respond[ed] to known peer harassment in a manner that is . . . clearly unreasonable." *Id.* at 1135 (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 630 (1999)).

Viewing the SAC in the light most favorable to Plaintiff, JLBD plausibly alleges sufficient facts to support her equal protection claim. Plaintiff alleges that Olesiuk was fully aware of multiple instances of sexual harassment and bullying that JLBD endured during her time at MBMS. SAC ¶¶ 16, 19–21, 28, 31. As stated above, these reports included serious allegations of a deepfake video of Plaintiff posted on TikTok, physical bullying and ridicule while at school, a derogatory message written on a bathroom stall, and a different video posted on TikTok of Plaintiff undressing in the MBMS locker room. *Id.* ¶¶ 14, 15, 18, 21. Defendant Olesiuk allegedly responded to the reports of the deepfake video by promising, but failing, to initiate an investigation alongside the school resource officer Mike Hamilton. *Id.* ¶ 20. The SAC further alleges that Defendant Olesiuk indicated to JLBD's father that Olesiuk could do very little about the deepfake posted online because it was created outside of school hours and off campus. *Id.* Additionally, regarding the graffiti in the bathroom, Plaintiff alleges that Defendant Olesiuk declined to investigate the incident further after the graffiti had been cleaned, telling Plaintiff that it would be best to put the matter behind them. *Id.* ¶ 19. In short, the SAC more than sufficiently alleges, at least for Rule 12 purposes, that Defendants responded to these instances of peer harassment with deliberate indifference. The claim survives.

## V. CONCLUSION

For the reasons discussed above, the Motion is denied.[2]

Dated: August 31, 2026

Hernán D. Vera
United States District Judge

[2] Defendants also moved to dismiss Plaintiff's Section 1983 substantive due process claim. Motion at 23–25. Plaintiff does not oppose Defendants on this challenge. *See* Opposition at 26 n.1. The claim is therefore dismissed on that basis.